IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-3010 |
| | : | |
| **JOHN WETZEL,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                     June 30, 2020

After we barred him from filing prisoner civil rights cases without paying filing fees due to his serial frivolous filings, incarcerated *pro se* prisoner Charles Talbert returns with civil rights claims against employees of the Pennsylvania Department of Corrections for losing his property and causing him headaches. Mr. Talbert is attempting to again proceed *in forma pauperis* for claims state actors violated his First, Fourth, Sixth, and Fourteenth Amendment rights. In April 2019, we detailed Mr. Talbert's long history of filing frivolous complaints and, consistent with Congress' mandate, barred him from filing further cases without paying the filing fees unless he pleads imminent danger of serious physical injury as required by Congress in 28 U.S.C. § 1915(g). Mr. Talbert fails to allege he is in imminent danger of serious physical injury. We deny Mr. Talbert's *in forma pauperis* motion and require he pay the filing fees to proceed with these allegations or we will close this latest case.

**I.     Alleged *pro se* facts**

Sometime before year-end 2019, Charles Talbert purchased several "legal and reference books" before the Pennsylvania Department of Corrections transferred him to SCI Phoenix on December 29, 2019.[1] SCI Phoenix officials did not permit Mr. Talbert to keep these books.[2] They gave him the choice of throwing them away or shipping them elsewhere.[3] Mr. Talbert opted to

send his books to us. [4] We sent Mr. Talbert's belongings back to SCI Phoenix.[5] The mailroom workers at SCI Phoenix then directed Mr. Talbert to send the books elsewhere or risk having them "destroy[ed]."[6] Mr. Talbert wrote to both a Superintendent and the Secretary of the Department of Corrections, neither of whom "intervene[d]" to help Mr. Talbert recover his personal property.[7] SCI Phoenix officials gave Mr. Talbert his "legal papers" but withheld his "books, prayer rug, Quran, and wedding ring[.]"[8]

Mr. Talbert unsuccessfully grieved prison officers return his personal property.[9] The Department of Corrections transferred him to SCI Camp Hill on January 13, 2020.[10] The "inventorying officer" at Camp Hill "discriminated against" Mr. Talbert by requiring him to remove his Islamic Kufi and by taking his necklace.[11] The SCI Camp Hill officers allowed other, non-Muslim prisoners to wear religious garments and symbols.[12] Mr. Talbert mailed his necklace to us.[13] We sent his necklace back to the prison.[14]

The SCI Camp Hill mailroom attendants began withholding Mr. Talbert's mail in February 2020 on the "false" belief it contained "methamphetemines [sic]."[15] The attendants withheld Mr. Talbert's "legal materials" and his necklace.[16] Mr. Talbert claims he suffered "(A) financial loss[,] (B) property loss[,] (C) pain and suffering[, and] (D) migraine headaches from stress, anxiety, and mental anguish."[17] The Department of Corrections transferred Mr. Talbert back to SCI Phoenix on March 10, 2020.[18]

On March 12, 2020, SCI Phoenix officers allegedly "retailiat[ed]" against Mr. Talbert for filing grievances by "pull[ing] a leash connected [to his] handcuffs . . . pepper spray[ing] [him] in the face, and slam[ming] [him] into the ground."[19] Mr. Talbert suffered "lacerations . . . and [wrist]bone injury[.]"[20]

**II.     Analysis**

Mr. Talbert mailed a complaint dated March 22, 2020 to our court.[21] Federal, state, and city protocols and stay-at-home orders intended to mitigate COVID-19 spread precluded our ability to process his complaint as mailed in late March 2020. He also moved for leave to proceed *in forma pauperis*. Our Clerk docketed this March 22, 2020 complaint last week. In the interim, Mr. Talbert mailed an "amended" complaint and motion to proceed *in forma pauperis* dated April 25, 2020 which the Clerk also docketed.[22]

Mr. Talbert's March 22 complaint includes the same allegations about the displacement of his personal property as the April 25 complaint.[23] The March 22 complaint details one instance of "excessive force" by SCI Phoenix officers occurring ten days earlier.[24] Though the March 22 complaint characterizes this use of excessive force in a conclusory fashion as "ongoing,"[25] Mr. Talbert removed both the physical harm allegation and the accused defendants from his April 25 amended complaint.[26]   He is no longer claiming physical harm or ongoing danger.

Our issue today is whether, given our April 5, 2019 Order in *Talbert v. Carney*,[27] Mr. Talbert alleges he is in imminent danger of serious physical injury before we can grant his motion to proceed *in forma pauperis*. After careful review of his pleadings, we find no allegation of imminent danger of serious physical injury. Mr. Talbert will need to pay the filing fees if he wishes to proceed.

The poor are not prevented from suing in federal court.[28] A plaintiff who cannot pay the filing fees must submit proof of their indigence to proceed *in forma pauperis*.[29] This does not give an indigent plaintiff license to file a continuous stream of lawsuits.[30] The Prison Litigation Reform Act ("Act") requires any prisoner who has previously had at least three complaints dismissed for being "frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted" to allege

they are "under imminent danger of serious physical injury" to proceed *in forma pauperis*.[31] Our Court of Appeals has defined "imminent dangers" as those which are "impending[,]" so past instances of serious physical injury do not merit section 1915(g)'s exception.[32]

We detailed Mr. Talbert's history of filing complaints while in prison and his status as a "three-strike" plaintiff in our April 5, 2019 Order in *Talbert v. Carney*.[33] Mr. Talbert had filed "at least fifty-four lawsuits" in our District by April 2019.[34] He had "at least four" *pro se* complaints dismissed for being frivolous or failing to state a claim from 2013 to 2016.[35] We reviewed his April 2019 complaint in *Talbert v. Carney* under section 1915(g) and required Mr. Talbert plead imminent danger of serious physical injury.[36] We declined his motion to proceed *in forma pauperis* because he did not plead imminent danger.[37]

As always, we "liberally construe[]" Mr. Talbert's complaints,[38] and read their allegations in the light most favorable to him.[39] We require him to allege facts and not "vague and [] conclusory" allegations he is in imminent danger of serious physical injury.[40]

Mr. Talbert's April 25 amended complaint only alleges he "was subject to . . . migraine headaches from stress, anxiety, and mental anguish" because prison officials withheld his property.[41] It otherwise details the process by which he lost his personal property and recites constitutional violations he suffered.[42] Mr. Talbert's March 22, 2020 complaint alleges physical injuries he sustained ten days before filing.[43]

A "three-strike" plaintiff does not merit section 1915(g)'s exception where he experiences headaches or anxiety relating to a prison official's actions.[44] A doctor put the plaintiff in *Richardson* on a "medical restriction" which prevented him exercising outside and performing his job in prison.[45] The plaintiff alleged just thinking of this restriction caused him to suffer "headaches" and an "exacerbation of [his] anxiety/depression."[46] Judge Slomsky held the plaintiff

did not merit section 1915(g)'s exception because his "headaches" were more "traceable [] to his own thoughts than the defendants' actions[,]" and are "insufficient to establish . . . imminent danger of serious physical injury[.]"[47]

By way of comparison, our Court of Appeals granted a *pro se* litigant the section 1915(g) exception where he realleged ongoing abuse before the district court ruled on his original complaint.[48] The plaintiff in *Prall* alleged prison guards "continue to . . . slap, choke, punch, kick, club and threaten him" whenever he complained to prison officials about the cleanliness of his cell in his original complaint.[49] He filed an amended complaint realleging the continuous nature of the attacks, describing them as occurring "at least once a week[,]" and alleging he experienced even worse physical abuse than what he originally alleged.[50] Our Court of Appeals held the plaintiff's complaints of ongoing conduct alleged imminent danger of serious physical injury "at the time" of filing.[51]

Mr. Talbert fails to plead he is in imminent danger of serious physical injury. Mr. Talbert alleges he "was subject to . . . migraine headaches."[52] He does not allege these headaches are ongoing. Even if we concluded Mr. Talbert continued to suffer these migraine headaches, they are not a result of any physical abuse by prison officials.[53] Like the plaintiff in *Richardson*, Mr. Talbert's own thoughts about his loss of personal property cause these headaches. Headaches are also not sufficiently serious injuries to merit a section 1915(g) exception.

Mr. Talbert's March 22 complaint similarly fails to plead he is in imminent danger of serious physical injury. Mr. Talbert alleges abuse and "ongoing . . . us[e] [of] excessive force" by SCI Phoenix prison officers against him.[54] He dated the complaint March 22, 2020 and describes the use of excessive force against him as occurring on March 12, 2020.[55] Our Court of Appeals requires a *pro se* plaintiff to allege the imminent harms of serious physical injury occurred "at the

5

time" of filing, and not in the past.[56] Though Mr. Talbert characterizes the abuses as "ongoing[,]" his proffered example occurred ten days before his filing.[57] He then dropped these allegations in his amended complaint. Unlike the plaintiff in *Prall*, Mr. Talbert does not reallege this physical abuse in his April 25 amended complaint.[58] These allegations of abuse are absent from Mr. Talbert's April 25 complaint, as are the accused defendants.[59] Mr. Talbert's pleadings suggest the incidents of March 12, 2020 are isolated and no longer ongoing.

### III. Conclusion

We deny Mr. Talbert's motion to proceed *in forma pauperis*. We barred him from filing prisoner civil rights claims on April 5, 2019 consistent with Congress' mandate in section 1915 unless he can plead imminent danger of serious physical injury. He now claims lost property and headaches. He once claimed physical abuse by correctional officers but dropped those claims in his amended complaint. Mr. Talbert files case after case with no merit. If he wishes to proceed in seeking redress from a public courtroom, Congress requires he either plead imminent danger of serious physical injury or pay the required fees. He has done neither.

---

[1] ECF Doc. No. 3, at p. 2.

[2] *Id.* at p. 3

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at p. 3-4.

[8] *Id.* at p. 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at p. 5.

[16] *Id.*

[17] *Id.* at p. 5-6.

[18] ECF Doc. No. 6, at p. 3.

[19] *Id.*

[20] *Id.*

[21] *Id.* at p. 1.

[22] ECF Doc. No. 3.

[23] ECF Doc. No. 6, at p. 1-2.

[24] *Id.* at p. 3.

[25] *Id.*

[26] ECF Doc. No. 3.

[27] *Talbert v. Carney*, No. 19-1340, 19-1341, 2019 WL 1516940, at *3 (E.D. Pa. Apr. 5, 2019). "[T]his Court has dismissed at least four of Mr. Talbert's civil actions as frivolous, malicious, or for failing to state a plausible claim for relief. . . . The dismissals in the four strike-eligible civil actions count as strikes against Mr. Talbert. . . . Mr. Talbert may in the future only bring a civil action as a prisoner if he: (1) pays the full filling fee upon commencement of the case, or (2) he is under imminent danger of serious physical injury."

[28] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 311 (3d Cir. 2001).

[29] 28 U.S.C. § 1915(a).

[30] *Abdul-Akbar*, 239 F.3d at 312.

[31] 28 U.S.C. § 1915(g).

[32] *Abdul-Akbar*, 239 F.3d at 315-16.

[33] No. 19-1340, 19-1341, 2019 WL 1516940 (E.D. Pa. Apr. 5, 2019).

[34] *Id.* at *3.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).

[39] *See Gibbs v. Cross*, 160 F.3d 962, 966 (3d Cir. 1998).

[40] *Ball v Famiglio*, 726 F.3d 448, 468 (3d Cir. 2013) *rev'd on other grounds Coleman v. Tollefson*, 135 S.Ct. 1759, 191 L.Ed.2d 803 (2015).

[41] ECF Doc. No. 3, at p. 5-6.

[42] *Id.* at p. 2-9.

[43] ECF Doc. No. 6, at p. 1, 3.

[44] *Richardson v. Dr. Gessner Primecare Med., Inc.*, No. 16-5461, 2016 WL 6609181 (E.D. Pa. Nov. 4, 2016).

[45] *Id.* at *2.

[46] *Id.*

[47] *Id.*

[48] *Prall v. Bocchini*, 421 Fed. Appx. 143 (3d Cir. 2011).

[49] *Id.* at 144.

[50] *Id.* at 144-45.

[51] *Id.* at 145.

[52] ECF Doc. No. 3, at p. 5-6.

[53] *Id.*

[54] ECF Doc. No. 6, at p. 3.

---

[55] *Id.* at p. 1, 3.

[56] *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 311, 316 (3d Cir. 2001); *Prall v. Bocchini*, 421 Fed. Appx. 143, 145 (3d Cir. 2011).

[57] ECF Doc. No. 6, at p. 1, 3.

[58] ECF Doc. No. 3.

[59] *Id.*